# Norris Estake

William L. Huganir and Albert C. Weymann, Jr., for accountant.

Roland Fleer, for executors of life beneficiary.

Franklin L. Wright and Cuthbert H. Latta, Jr., for remainder legatees.

Raymond Pearlstine, guardian and trustee ad litem.

HOLLAND, P. J., March 19, 1953.—The account shows a balance of principal for distribution in the sum of $227,690.45, composed of investment securities and cash, as shown on pages 2, 3, 4, and 5, inclusive,

of the account; and a balance of income for distribution in the sum of $384.56, composed of cash.

The transfer inheritance tax has been paid.

The account is filed because of the death on January 15, 1952, of Sarah Fox Norris, the life beneficiary.

The executors of the will of Sarah Fox Norris, the deceased life beneficiary, filed two exceptions that may be considered together as they raise the single exception to the transfer from income to principal of $5,-278.41, as shown on page 99 of the income account under income-disbursements, and on page 11 under principal-receipts. The history of the asset from which this sum was derived, and the details as to the calculations by which this sum was stated are briefly mentioned in the first exception, and fully set out in the petition for adjudication, the report of the guardian and trustee ad litem, exceptant's brief and in the statement of counsel for the accountant, which latter is transcribed as a part of the record. There is no need, therefore, to restate it here. Suffice it to say that the sum represents income accrued after the death of testator and during the life of the life beneficiary, Sarah Fox Norris, specifically during the years 1944 to 1947, inclusive.

We are concerned with the residuary trust and, for the purposes of disposition of these exceptions, particularly with the interest of the primary beneficiary, Sarah Fox Norris, now deceased. Clause 10 of the will, in effect, gives her "the entire net income", it to be paid to her "in quarterly or monthly instalments during her life". Stopping there for a moment, it is a foregone conclusion that testator intended her to have the entire income, which is another way of saying all the income, except that the word "entire" is stronger than the word "all". It can only mean that once a sum coming into the trust could be designated "net income", it automatically belonged to the then

life beneficiary, Sarah Fox Norris. In fact, if it had accrued during her life it would have been payable to her (or her estate) even if it had been collected after her death. We need not labor this point as the sum in question was actually collected during her life.

The contended point is as to whether principal should be reimbursed out of the sum in question for payments made to her out of principal to make up a minimum payment to her of $1,000 per month. To answer this question we must look at the other language in clause 10. This provides, in effect, first, that if there is insufficient income on hand in any one month to pay her $1,000, the trustee shall pay the deficiency out of principal and the transaction is closed for that month. Although it says that the payments can be made monthly or quarterly, it is my opinion that she could step up to the trustees and ask for $1,000 each month and get it, because it says that if the income is not sufficient to "insure" the payment of "at least" $1,000 per month, the deficiency shall be paid out of principal. It would appear that the payment "quarterly" was only intended as a matter of convenience to her, that she could permit, or demand the payment monthly. The fact that testator used the words "at least", clearly indicated that he expected, or at least hoped, she would get more. We have thus far the intention of testator that she should have the entire income, however great or small, and, as soon as designated as such, with an assurance of $1,000 a month, with contribution from principal if necessary, and the payments as to each month being a closed transaction.

But that even was not all she could get. What both sides of the controversy have completely overlooked is that clause 10 goes on to say that over, above, and beyond the $1,000 per month or the aggregate of $12,000 per year, or however you choose to calculate

the minimum, she could get, "in the sole and uncontrolled discretion" of the trustees, any amount of the principal to the total extinction of the principal.

Certainly this indicated that testator intended that there should be no close dealing nor any fine spun arguments regarded in calculating to what his wife was entitled. She was the primary object of his bounty and he left no doubt about it. Even conceding every phase of the accountants' argument, the sum in question could have been given her as a part of the principal as a proper exercise of their "sole and uncontrolled discretion". But, we need not rely on this. She was entitled to it as a part of the "entire" income.

The accountants make a point of the fact that the equivalent of a large part of the sum in question was paid her out of principal the same year the sum was collected. I do not see that this makes any difference. Once any part of the principal was paid her, the transaction was closed, and, as to any sum coming in thereafter, no matter how soon, the one decisive question was, "was it income or not?" If so, it belongs to her.

The two exceptions of the executors of the will of Sarah Fox Norris, deceased, are sustained, and the sum in question is awarded to them. The accountants are directed to make the necessary adjustments.

The question is submitted as to whether the legacies in the aggregate of $28,000 distributable at the death of Sarah Fox Norris should have deducted from them the Pennsylvania transfer inheritance tax attributable thereto and further whether there should be apportioned against and deducted from said pecuniary legacies that proportionate part of the Federal estate tax originally paid by the executors which is attributable to them; or whether all of the death taxes should be borne by and accordingly paid out of the remaining balance of principal of the residuary estate which, in accordance with the terms of the will, is to be held

in further trust for the niece of testator, Elizabeth Norris Jordan.

The answer to this question depends on the application of clause 13 to the factual situation and to the language of clause 10, which disposes of the residue. Clause 13 is the usual provision for the payment of death taxes out of the residue or, as testator describes it, the "residuary estate". The argument becomes concentrated upon the definition and interpretation as to what constitutes the "residue". The guardian and trustee ad litem, in his report, in approving the position taken by the trustees, argues, in effect, that testator has defined the "residue", and that we are bound by his definition. He points out that testator set up the residue first for the benefit of his wife, and, that it thus having been finally constituted as such, he directed that at his wife's death these five pecuniary gifts should be paid out of the "principal of my residuary estate"; that he, therefore, intended, at his wife's death, six shares to be paid out, five in money, and the sixth, the balance of the "residuary estate", whereby all six, regardless of their character, were to bear proportionately the whole of the tax burden.

The pecuniary legatees argue that this is only playing with words, and, to be consistent, the wife's life benefit, which was derived from the residue, would have had to bear its proportion along with the supposed six shares of the residue. This, they concede, was not intended. They argue further that when a testator puts in his will this usual direction to pay all death taxes out of the residue, testator generally and commonly has in mind the exemption of all specific and pecuniary gifts. Reading the will from its four corners, they argue, and in the light of the character of the donees of the pecuniary gifts, both those payable at his death and those payable after the death of his wife, and their relation to him, he intended no distinc-

tion between the former and the latter class of legatees, but that all pecuniary legacies were to be exempt. It is further pointed out that, had the wife predeceased testator, all the pecuniary legacies would have fallen into one class and all have been paid out clear of taxes.

This latter argument appears to me the more plausible. The schedule appended to the brief of the pecuniary legatees shows the calculation if their legacies are to bear their relative proportion of the taxes, State, and Federal. In the case of the individual legatees, it would deprive them of almost 25 percent of their legacies. This testator never intended. I hold that these pecuniary legacies are exempt from all death taxes, and are payable to them in full, and that all the taxes are payable out of the balance of the principal of the trust after said payment to them in full. . . .